IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

NATHANIEL ANTONIO THOMAS                                         PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:13CV973-LRA

WARDEN GALLESPIE, ET AL.                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendants the GEO Group, Inc., Dr. Ricardo Gillespie (named in Complaint as "Warden Gallespie"), Autumn Wedgeworth, and Patricia Hart filed a Motion for Summary Judgment [46] requesting that the Complaint filed against them by Plaintiff Nathaniel Antonio Thomas be dismissed.  Defendants allege that Thomas failed to exhaust the remedies available through the Administrative Remedy Program (ARP) of the Mississippi Department of Corrections [MDOC] at the East Mississippi Correctional Facility [EMCF] in Meridian, Mississippi, as to many of his claims.  Additionally, Defendants contend that the claims he did exhaust (regarding his 15-day stay in lockdown upon his arrival at EMCF) should be dismissed for failure to state a claim upon which relief may be granted.

### Facts and Procedural History

Thomas filed this complaint on August 15, 2012, while an inmate at the EMCF, naming these Defendants, as well as others who have not been served with process.  GEO ran the EMCF until July 13, 2012, and the unserved Defendants were no longer employed at the facility when service of the summonses was attempted.  Process was returned

unexecuted as to Warden Bart Grimes, Warden Horton, Dr. Faulks, Unit Manager Hurk, and Lieutenant N. Brandon [17].  No current addresses have been provided for these persons.  Although the "psychiatrist,"  "psychologist," "medical director," "Ms. Unknown V," "Educational Director," and the "John Doe Members of the Atlanta Black Team" were also named as defendants by Plaintiff, no process was issued because the Court was not provided the current addresses and full identities of these persons.

In his complaint, Thomas charges that he arrived at EMCF on April 3, 2012, along with 60 other inmates.  They were placed in the gym for quick orientation by all the EMCF staff.  Thomas and some of the others were sent to Unit 6-C, and the unit was placed on 24-hour a day lockdown.  During this period, conditions were very limited.  Plaintiff had no bath for the first 15 days.  Riots occurred, and the prison conditions were extremely dangerous.  Plaintiff testified that on one occasion, he was left in the yard with cuffs on, and many other inmates were not restrained.  Gas bombs were used to control the violence, and Plaintiff was not allowed proper showering to remove the ingredients.  The rioting which resulted due to the conditions caused many life-threatening situations for all inmates, according to Thomas.  Thomas remained in this lockdown situation until April 16, 2012, or 13 days.

Thereafter, Thomas was moved from the lockdown, but he still alleges that his conditions of confinement violated his constitutional rights thereafter.  According to Thomas, his medical care was inadequate.  He suffered from high blood pressure and did not receive the required medication.  He also suffered from bleeding hemorrhoids and did

not receive proper treatment. He complains that the conditions at the prison were constitutionally inadequate during the period of time that GEO operated the prison, but he concedes that GEO's last day was July 13, 2012. These Defendants had no power after that date to change the conditions at EMCF.

According to Thomas, he was not granted his proper custody status; his religious and educational programs were all denied; he was not given law library access; and, he was not given proper mental health care. He was given rules violation reports in retaliation for the complaints he filed. He received an RVR for stabbing another inmate. Because it was in self-defense, the RVR was later expunged, according to Thomas.

## Summary Judgment Standard

These Defendants contend that Thomas did not properly exhaust all of the claims set forth in his Complaint, and that they are entitled to a summary judgment in this case for that reason. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In response to a motion for summary judgment, the non-moving party must provide specific proof demonstrating a triable issue of fact as to each of the elements required to establish the claim asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122–23 (5th Cir. 1988). The court must resolve all reasonable

3

doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982).

## Legal Analysis

### 1.        Unexhausted Claims

The applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

This statute clearly requires an inmate bringing a civil rights action in this Court to first exhaust his available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Exhaustion is no longer left to the discretion of the district court, but is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies; the exhaustion requirement also means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This is so regardless of whether the inmate's ultimate goal is a remedy not offered by the administrative process, such as money damages. *Id.*

In *Jones v. Bock*, 549 U.S. 199, 211 (2007), the Supreme Court confirmed that exhaustion was mandatory under the PLRA and that "unexhausted claims cannot be brought in court." The PLRA governs all of Thomas's claims. Accordingly, he is required to complete the ARP process in its entirety as to all of his claims before he is able to file suit under § 1983.

The pleadings reflect that Thomas entered EMCF on April 3, 2012, and he was released from lockdown on April 16, 2012. He filed his ARP regarding the conditions for those 13 days on April 17, 2012, the day after he was released. GEO ended its management at EMCF on July 13, 2012, and Thomas filed this lawsuit in federal court on August 16, 2012, regarding his conditions of confinement for the 13-day period of lockdown and the conditions under which he was housed thereafter. Because Thomas filed his ARP on April 17th, the only exhausted claims are those regarding the 13-day period of lockdown where he was housed when he first arrived at EMCF.

The exhaustion Thomas refers to only involved this lockdown period, and Defendants concede this issue was exhausted. Thomas may not agree with the procedures used in the ARP process. However, this Court has no power to construct the ARP policies for a prison. The requirement of exhaustion applies regardless of a plaintiff's opinion on the efficacy of the institution's administrative remedy program. *Alexander v. Tippah County, MS*, 351 F.3d 626, 630 (5th Cir. 2003). It is not for this Court to decide whether the procedures "satisfy minimum acceptable standards of fairness and effectiveness." *Booth*, 532 U.S. at 740 n. 5. Plaintiff's opinion regarding how ineffective

5

the EMCF ARP process was is insufficient to overcome Supreme Court precedent mandating exhaustion of remedies available under the ARP.

The Fifth Circuit has confirmed that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*).  In this case, Thomas clearly did not fully exhaust his administrative remedies as to all his claims before filing this lawsuit, and the Court has no choice but to dismiss his Complaint as to any claims which arose after Thomas filed his ARP on April 17, 2012.

Additionally, the Court notes that GEO has not managed EMCF since July 2012, and any requested injunctive relief would not be possible as to these Defendants.  They no longer have any authority at EMCF and have no ability to provide any relief for Thomas regarding his current conditions of confinement.

### 2.    Exhausted Claims

This Court has the authority to dismiss the unexhausted claims in the Complaint but to move forward in this lawsuit with the exhausted claims.  See *Jones*, 549 U.S. at 219-224.  Accordingly, Thomas's complaints regarding his 13 days in lockdown when he first arrived at EMCF have been considered on the merits.  It was difficult for the Court to determine precisely which claims related to this period when Thomas testified at his omnibus hearing.  However, a transcript of the hearing was filed by Defendants in support

of the Motion for Summary Judgment [46-1], and the Court has thoroughly reviewed all of Thomas's sworn testimony at this hearing, along with the pleadings.  This review compels the Court to find that Thomas's claims are legally frivolous, and he has failed to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2), applies to prisoner proceedings *in forma pauperis* and provides that "the court shall dismiss the case at any time if the court determines that . . .(B) the action or appeal --  (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a  defendant who is immune from such relief."  A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist."  *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998).

Thomas concedes that during this period of time in April 2012, there were riots and gang fights on his unit and the unit "turned really violent." [46-1, p. 14].   According to Thomas, this was because the inmates were not being fed properly and were not given showers.  Yet he does concede that food was provided.  Thomas testified that "sometimes we ate.  Sometimes we didn't. ... sometimes we got all three hots.  Sometimes we didn't." [46-1, p. 13.]   Thomas charges that sometimes it was too chaotic to eat because of the prison riots and fights, and sometimes the food was stolen.  According to Thomas, the administration attempted to stop the fighting and rioting by using gas-bombs.  They also

restrained Thomas, and some of the other inmates, with plastic cuffs.  During this period Thomas was also unable to get medical help.

Although conditions may have been poor at EMCF during this two-week period, Thomas concedes that it became an emergency situation due to the rioting and gang movement.  The Supreme Court's statement regarding interference by the courts into prison administration has often been quoted:  It is well-settled that the courts, unless presented with patently unreasonable conduct, are reluctant to interfere with the day-to-day operations of a prison.  *Bell v. Wolfish*, 441 U.S. 520 (1979).  A prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.  *Rhodes v. Chapman*, 452 U.S. 337, 349 n. 15 (1982).  "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (quoting *Bell,* 441 U.S. at 547).  Federal courts are not prison managers, and, ordinarily, courts accord great deference to the internal administrative decisions of prison officials.  *Royal v. Clark,* 447 F.2d 501, 501-502 (5th Cir. 1971) ("Federal Courts will not interfere in the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline.") (citations omitted).  The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration."  *Shaw v. Murphy*, 532 U.S. 223, 230 (2001).

This Court recognizes that a prison riot is a serious emergency, and immediate precautions must be taken to end it.  Gas-bombing is an often used measure, and this Court cannot dictate the appropriate measures which should be taken.  Providing rioting prisoners with regular meals and showers would obviously not be a priority in such dangerous  situations.  Thomas admitted he was provided food, and he did not claim to have been physically injured during this two-week period.  He testified that he was not harmed when he was restrained during the riot.  [46-2, p. 34].

The Court finds that Plaintiff's allegations, taken in a light most favorable to him, simply do not rise to the level of a constitutional violation.  Harsh "conditions of confinement" may constitute cruel and unusual punishment unless such conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Whitley v. Albers*, 475 U.S. 312, 319 (1985) *quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  In order to successfully prove an Eighth Amendment conditions of confinement claim, a civil rights plaintiff must allege facts which suggest that the prison officials' conduct resulted in the plaintiff being incarcerated under "conditions which [posed] an unreasonable risk of damage to [the prisoner's] future health."  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir.2001).  This "risk must be of such a level that today's society would not tolerate it." *Id*.  In order to prevail on such a conditions of confinement claim, a plaintiff must plead facts which establish: (1) objectively, that the deprivations are sufficiently serious; and (2) subjectively, that the defendant prison officials knew of

the deprivations but nevertheless have shown a "deliberate indifference" to the plaintiff's "health or safety." *Id.*

A prisoner must show that the inflicting officer has exhibited "deliberate indifference" to the conditions. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Mere negligence does not satisfy the "deliberate indifference" standard. *Id.* The prisoner must suffer from an **extreme deprivation** of any "minimal civilized measure of life's necessities." *Id.* at 304.

In Plaintiff's case, neither the objective or subjective components can be met. It is obvious that these prison officials were not attempting to punish Thomas by attempting to stop the rioting or by withholding showers and food. The situation was an emergency, regardless of why the prisoners rioted, and unusual measures were necessary. Although Thomas suffered from discomfort during this 13-day lockdown, he was not physically injured and the short-term deprivations were not extreme under the circumstances. None of these Defendants, including Thomas's mental health counselor and his case manager, intended to punish him with these conditions. No facts have been alleged which would establish the requisite "deliberate indifference" to Thomas's health and safety for this 13-day period.

An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Under the circumstances, wherein Plaintiff has not set forth any fact or testimony with which to show an intent to punish, or deliberate

indifference, on the part of these individuals, the conditions complained of do not rise to the level of an Eighth Amendment or Fourteenth Amendment violation.  Plaintiff has shown no actual injury; he primarily claimed discomfort and the fear of becoming harmed by other inmates.  This does not rise to the level of an Eighth Amendment claim, and these exhausted claims regarding Thomas's 13-day stay in lockdown must be dismissed.

### Conclusion

For these reasons, the Court finds that Defendants' Motion for Summary Judgment [46] must be **granted**, and Plaintiff's Complaint shall be dismissed without prejudice as to all Defendants as to the unexhausted claims as discussed above.  The Complaint is dismissed with prejudice as to Thomas's claims regarding his 13-day period in lockdown in EMCF from on or about April 3, 2012, until April 16, 2012.

IT IS THEREFORE ORDERED that the Complaint is dismissed, and Final Judgment shall be entered.

SO ORDERED this the 23rd day of September 2015.


/s/Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE